Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4261 | **DATE** | 12/6/2002 |
| **CASE TITLE** | Haemoscope Corporation vs. Pentapharm AG, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 12/12/2002 at 9:30 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion to amend its previously filed motion to dismiss [19-1] is granted. The Pentapharm defendants' motion to dismiss [13-1] is granted in part, denied in part and deferred in part. Pentapharm AG's 12(b)(5) motion to dismiss is denied, the Pentapharm defendants' 12(b)(2) motion to dismiss is granted with respect to Pentapharm GmbH, and the ruling on the 12(b)(2) motion with respect to Pentapharm AG is deferred, subject to a status and possibly further briefing. Given the lack of personal jurisdiction over Pentapharm GmbH, that defendant's motion to dismiss for failure to state a claim is denied as moot. Finally, the court cannot rule on Pentapharm AG's motion to dismiss for failure to state a claim unless and until it determines that Pentapharm AG is subject to personal jurisdiction in this court. A status hearing is set for Thursday, December 12, 2002 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| HAEMOSCOPE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 02 C 4261 |
| v. | ) | |
| | ) | |
| PENTAPHARM AG, et al., | ) | Judge Joan B. Gottschall |
| | ) | |
| Defendants. | ) | |

DOCKETED DEC 9 2002

## MEMORANDUM OPINION AND ORDER

Plaintiff Haemoscope Corporation ("Haemoscope") has brought a five-count complaint against defendants Pentapharm AG and Pentapharm GmbH alleging federal claims of trademark infringement and trademark dilution under the Lanham Act, 15 U.S.C. § 1125(a) and (c), in addition to several related state law claims. The Pentapharm defendants have moved to dismiss the case under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Defendant Pentapharm AG also moved to dismiss under Fed. R. Civ. P. 12(b)(5) for improper service.[1] For the reasons that follow, Pentapharm AG's 12(b)(5) motion to dismiss is denied, the Pentapharm defendants' 12(b)(2) motion to dismiss is granted with respect to Pentapharm GmbH, and the ruling on the 12(b)(2) motion with respect to Pentapharm AG is deferred, subject to a status hearing and possibly further briefing. Given the lack of personal jurisdiction over Pentapharm GmbH, that defendant's motion to dismiss for failure to state a claim is denied as moot. Finally, the court cannot rule on Pentapharm AG's

---

[1] In their original motion to dismiss, both Pentapharm defendants moved to dismiss due to improper service, but after Haemoscope served Pentapharm GmbH in compliance with the Hague Convention, Pentapharm GmbH sought permission to withdraw its 12(b)(5) motion. (*See generally* Defs.' Mot. Am. Mot. Dismiss.) Defendants' motion to amend their previously filed motion to dismiss is granted. Accordingly, the court will address the 12(b)(5) motion only as it relates to Pentapharm AG.

motion to dismiss for failure to state a claim unless and until it determines that Pentapharm AG is subject to personal jurisdiction in this court.

I. **BACKGROUND**

Plaintiff Haemoscope is an Illinois corporation in the business of importing, and now making, specialized blood coagulation testing machines which it uses for conducting laboratory tests and also sells to others. The development of Haemoscope's blood coagulation testing machines was based on the work of Dr. Hartert of Germany. According to Haemoscope, it has been the only United States importer and reseller of the Hartert machines, which are sold under the trademark THROMBELASTOGRAPH®, and is now designing, manufacturing and selling machines under that trademark (and its shortened form, TEG®) worldwide after acquiring rights to the mark from the German owners. Haemoscope alleges that, through Pentapharm GmbH's product known as ROTEG and statements on the Pentapharm defendants' websites relating to that product, the Pentapharm defendants are infringing upon and diluting Haemoscope's THROMBELASTOGRAPH and TEG trademarks. Specifically, Haemoscope alleges that the Pentapharm defendants' websites feature descriptive, misdescriptive and generic misuses of Haemoscope's registered trademarks.

Both Pentapharm defendants are foreign entities: Pentapharm AG is a Swiss corporation and its sister corporation Pentapharm GmbH is a German corporation. The Pentapharm defendants are two of nine independent companies owned by Pentapharm Holdings, Ltd., which is located in Switzerland. The focus of Pentapharm GmbH's business is in vitro diagnostics. One of its principal products is the ROTEG whole blood haemostatis analyzer, which is currently sold in Europe. Pentapharm GmbH conducts no business in Illinois or anywhere else in the

2

United States, does not market, promote, advertise, offer or sell any products in the United States (with a limited exception, as explained below), and has no relationships with any distributors in this country. Further, Pentapharm GmbH has not yet applied for FDA approval of the ROTEG device.

However, Pentapharm GmbH has filed an application (through its sister corporation Pentapharm AG) to register the ROTEG trademark in the United States. Also, although the ROTEG device is not currently sold or marketed in this country for in vitro diagnostic purposes, Pentapharm GmbH did ship one device to a Massachusetts pharmaceutical company in February 2002 for research use only.[2] Pentapharm GmbH subsequently sold three ROTEG devices, for research use only, to a Danish company. In August 2002, at the purchaser's request, Pentapharm GmbH shipped two of those devices directly to the Danish purchaser's sites in Texas and Virginia.

Pentapharm AG, Pentapharm GmbH's sister corporation, is in the business of researching, developing and manufacturing active ingredients used in the diagnostic, pharmaceutical and cosmetics industries. Like Pentapharm GmbH, Pentapharm AG conducts no business in Illinois, and does not offer, promote, advertise or sell any of its products here. Pentapharm AG does sell its pharmaceutical and diagnostics ingredients directly to a few United States purchasers, but none are in Illinois. Further, those purchasers do not resell the pharmaceutical or diagnostics ingredients; instead, they incorporate them into their own products. Pentapharm AG also sells its cosmetics ingredients to its United States distributor, Centerchem,

---

[2] It is unclear whether the Massachusetts pharmaceutical company paid for the ROTEG device it received.

Inc., located in Connecticut.

Pentapharm AG and Pentapharm GmbH maintain their own websites at "pentapharm.com" and "pentapharm.de," respectively.[3] Each website offers general information about the company, its products and/or services. Further, each website allows users to request additional information about the company by submitting an on-line form. Neither website contains pricing information or allows for the direct purchase of the company's products. Moreover, neither website offers users direct interaction with a customer service representative. Pentapharm GmbH's website does not offer downloadable catalogs, nor does it provide any addresses or telephone numbers for contacts in the United States. Pentapharm AG's website does offer contact information for its American distributor, Centerchem, Inc., regarding its cosmetics and diagnostic products. Pentapharm AG's website also offers a downloadable catalog, but that catalog does not provide any information regarding the ROTEG device (nor does it provide pricing information). Rather, it directs readers interested in obtaining information about ROTEG to contact its sister company, Pentapharm GmbH. Pentapharm AG's website contains a link to the "pentapharm.de" website, and features a profile of Pentapharm GmbH in the description of the Pentapharm companies.

Pentapharm AG is also the fiduciary holder of all trademarks for the Pentapharm companies. Accordingly, Pentapharm AG filed the application to register the ROTEG trademark in the United States on behalf of Pentapharm GmbH. When it filed the trademark application, Pentapharm AG designated the Washington D.C. law firm of Finnegan, Henderson, Farabow,

---

[3] "De" is the top-level German domain name. In addition to the "pentapharm.de" website, Pentapharm GmbH maintains an identical website at "roteg.com." Because those sites are identical, the court limits its discussion to "pentapharm.de."

4

Garrett & Dunner L.L.P. ("Finnegan, Henderson") as its domestic representative for that application.

## II. DISCUSSION

### A. Service of Process Upon Pentapharm AG

Pentapharm AG has filed a motion to dismiss pursuant to Rule 12(b)(5), asserting that service upon Finnegan, Henderson was improper. Pentapharm AG admits that in its application to register the ROTEG trademark, it designated Finnegan, Henderson as its "domestic representative to receive service in connection with proceedings affecting the mark," as required by Section 1051(e) of the Lanham Act. Relying upon *Sunshine Distribution, Inc. v. The Sports Authority Michigan, Inc.*, 157 F. Supp. 2d 779, 787 (E.D. Mich. 2001), Pentapharm AG argues that "the domestic representative provision of the Lanham Act does not relate to service for civil actions or the jurisdiction of the federal courts." (Defs.' Mem. Supp. Mot. Dismiss at 4.) Conversely, relying on, *V&S Vin & Sprit Aktiebolag v. Cracovia Brands, Inc.*, 212 F. Supp. 2d 852, 855-56 (N.D. Ill. 2002), Haemoscope argues that the agency of a party's designated domestic representative is not limited to proceedings before the Patent and Trademark Office ("PTO"), but rather extends to other civil actions relating to the mark the party seeks to register. The court finds *V&S* more directly on point and more persuasive than *Sunshine Distribution*. In *Sunshine Distribution*, the court addressed whether § 1051(e) authorized nationwide service of process, whereas in *V&S*, the issue before the court was the precise issue presented here: whether it is proper to serve a foreign defendant in a civil action through its domestic representative designated under § 1051(e). *Sunshine Distrib.*, 157 F.2d at 787; *V&S*, 212 F. Supp. 2d at 854. Moreover, the *V&S* court's analysis, which included an examination of the legislative history of

5

§ 1051 as well as the language of the statute, was more comprehensive. Accordingly, this court follows the holding in *V&S* that "there is nothing in the text of § 1051(e) itself or in the legislative history which suggests that 'proceedings affecting the mark' are limited to proceedings before the PTO." *V&S*, 212 F. Supp. 2d at 855. The court therefore finds that Haemoscope properly served Pentapharm AG's domestic representative designated under § 1051(e), and denies Pentapharm AG's motion to dismiss under 12(b)(5).

B.  Personal Jurisdiction Over Both Pentapharm Defendants

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(2), the plaintiff bears the "burden of providing sufficient evidence to establish a *prima facie* case of personal jurisdiction." *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987). In ruling on a 12(b)(2) motion, the court must accept as true the jurisdictional allegations in the complaint, unless defendants submit contravening affidavits. *Id.* Any conflicts among the parties' affidavits must be resolved in favor of the plaintiff. *Id.* "However, the court will take as true all facts in the defendant's affidavits that are unrefuted by the plaintiff." *Haggerty Enters., Inc. v. Lipan Indus. Co., Ltd.*, No. 00 C 766, 2001 WL 968592, at *2 (N.D. Ill. Aug. 23, 2001). In a federal question case, personal jurisdiction may be exercised as long as haling the defendant into the court is consistent with Fifth Amendment due process principles and the defendant is amenable to process from the court. *Lifeway Foods, Inc. v. Fresh Made, Inc.*, 940 F. Supp. 1316, 1318 (N.D. Ill. 1996) (citing *United States v. Martinez De Ortiz*, 910 F.2d 376, 381-82 (7th Cir. 1990)).

1.  *Due Process*

To satisfy constitutional due process requirements, a defendant must have "certain minimum contacts" with the forum in question so that a court's exercise of personal jurisdiction

6

over a defendant "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). The meaning of that standard in a given case depends on which type of personal jurisdiction the court is asked to exercise: specific or general jurisdiction. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997). A court has general jurisdiction only if the defendant is domiciled in the forum or "has continuous and systematic general business contacts with the forum." *Id.* (internal quotation marks omitted). If the court cannot exercise general jurisdiction, it will be able to exercise specific jurisdiction provided that the defendant has sufficient minimum contacts with the forum and the litigation "is related to or 'arises out of'" those specific minimum contacts. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

In a federal question case like the case at bar, the forum in question is the United States: if the defendant has "sufficient contacts with the United States as a whole rather than any particular state or other geographic area," the due process requirements of the Fifth Amendment are satisfied.[4] *Martinez de Ortiz*, 910 F.2d at 382. The court therefore must examine each defendant's contacts with the United States.

   a.   *Pentapharm GmbH*

Pentapharm GmbH's contacts with the United States are extremely minimal: it maintains a website that is accessible in this country and, although the ROTEG device is not currently sold or marketed in the United States for in vitro diagnostic purposes, Pentapharm GmbH shipped one

---

[4]From the briefs, it appears that none of the parties appreciated the significance of the distinction between a federal question case and a diversity case. Although the parties do address the Pentapharm defendants' contacts with the United States, they do so only as those contacts relate to amenability to service of process under Fed. R. Civ. P. 4(k)(2).

device to a Massachusetts pharmaceutical company in February 2002 for research use.[5]

As an initial matter, the fact that Pentapharm GmbH maintains a website that is accessible in the United States does not constitute sufficient activity for this court exercise either general or specific personal jurisdiction. Whether a website provides proper grounds for exercising personal jurisdiction depends on "the nature and quality of commercial activity that an entity conducts over the Internet." *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (E.D. Pa. 1997). A three part sliding scale analysis has emerged for determining "what level of website interaction subjects a defendant to personal jurisdiction in a cyberspace trademark infringement case." *Euromarket Designs, Inc. v. Crate & Barrel, Ltd.*, 96 F. Supp. 2d 824, 837 (N.D. Ill. 2000). At one end of the continuum are active websites, where the defendant directly sells its products through the website. *Haggerty Enters.*, 2001 WL 968592, at *5. Passive websites, which do "little more than make information available to those who are interested," fall at the other end of the continuum. *Zippo*, 952 F. Supp. at 1124. Passive websites do not provide a basis for the exercise of personal jurisdiction, but active websites do. *Haggerty Enters.*, 2001

---

[5]In August 2002, Pentapharm GmbH shipped two other ROTEG devices to the United States at the request of the Danish company who purchased them. The court does not consider those shipments because they occurred two months after Haemoscope filed its complaint and "jurisdiction ordinarily depends on the facts as they exist when the complaint is filed." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989). Haemoscope has not offered any basis for the court to depart from that rule. In fact, Haemoscope appears to rely on just the shipment to Massachusetts. (Pls.' Supp. Materials Mot. Dismiss) ("Pentapharm GmbH has indeed transported at least one [ROTEG] product into the United States for 'research use only.'") More importantly, Haemoscope offers no evidence that when Pentapharm GmbH sold the ROTEG devices to the Danish purchaser, Pentapharm GmbH intended for those devices to end up in the United States. *See Haggerty Enters.*, 2001 WL 968592, at *4. The purchaser did not ask Pentapharm GmbH to ship the ROTEG devices to the States until several months after the purchase. "Placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum state." *Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 112 (1987).

8

WL 968592, at *5. The third category, sometimes called a hybrid website, falls between the two ends of the continuum—it does not allow a user to purchase defendant's products through the website directly, but does allow a user to exchange information with the defendant. *Id.* A hybrid website can provide a basis for exercising personal jurisdiction over defendants who maintain such sites, "but only after finding the level of interactivity and the commercial nature of the interaction to be high." *Id.*

The court agrees with Pentapharm GmbH that its website is passive. The website offers general information about the company, its products, and/or services. The website does not allow users to purchase defendants' products through the website—it does not even contain pricing information or allow users to download a catalog. Further, the court finds that although the website allows users to request additional information about the company by submitting an on-line form, the site does "little more than make information available to those who are interested . . . ." *Zippo*, 952 F. Supp. at 1124. In factually analogous cases, courts have found such websites to be passive. *LaSalle Nat'l Bank v. Vitro, Sociedad Anonima de Capital Variable*, 85 F. Supp. 2d 857, 862 (N.D. Ill. 2000); *Haggerty Enters.*, 2001 WL 968592, at *5. The website at issue in *LaSalle National Bank* did not allow for direct sales, but did offer users access to on-line catalogs and gave them the ability to interact directly with defendant's customer service representatives. *LaSalle Nat'l Bank*, 85 F. Supp. 2d at 862. Similarly, in *Haggerty Enterprises*, the website listed no prices and did not offer direct sales, but did allow the user to contact the defendant through its website to obtain further information. *Haggerty Enters.*, 2001 WL 968592, at *6. Although the websites at issue in those cases allowed "a minimal level of interactivity," the courts still found them to be passive rather than hybrid. *LaSalle Nat'l Bank*, 85

9

F. Supp. 2d at 862 (internal quotation marks omitted). And those passive websites were at least as interactive as, if not more interactive than, Pentapharm GmbH's website.

Relying on *Publications International, Ltd. v. Burke/Triolo, Inc.*, 121 F. Supp. 2d 1178 (N.D. Ill. 2000), Haemoscope argues that Pentapharm GmbH's website is a highly commercially interactive, hybrid website. But even assuming that Pentapharm GmbH's website is a hybrid, it is not highly commercially interactive, at least with respect to users in the United States. In *Publications International*, the court found a hybrid website to be highly commercially interactive because, after requesting a catalog through the website, users received defendant's catalog and could place orders. 121 F. Supp. 2d at 1183. In contrast, Pentapharm GmbH's website is not used to generate sales in the United States: if a user in this country requests additional product information from Pentapharm GmbH through its website, the user is informed that the ROTEG device is not yet available here.

Pentapharm GmbH is not subject to general jurisdiction: a passive website and the shipment of one ROTEG device are not pervasive or extensive enough contacts to constitute "continuous and systematic general business contacts with the forum." *RAR, Inc.*, 107 F.3d at 1277 (internal quotation marks omitted); *see also LaSalle Nat'l Bank*, 85 F. Supp. 2d at 861 (passive website insufficient to meet rigorous standard for general jurisdiction). Nor is Pentapharm GmbH subject to specific jurisdiction based on its passive website: even though this suit directly relates to that website, a passive website is insufficient to satisfy the minimum contacts requirement. *See Haggerty Enters.*, 2001 WL 968592, at *3, 6-7 (passive website did not satisfy minimum contacts required for exercising specific jurisdiction).

The only remaining issue is whether Pentapharm GmbH is subject to specific jurisdiction

10

based on its shipment of one ROTEG device to a research institution in Massachusetts in February 2002. To make that determination, the court normally would assess whether this suit "*directly arise[s]* out of [that] specific contact[] between the defendant and the forum," *RAR, Inc.*, 107 F.3d at 1278 (emphasis in original), and whether, through that shipment, Pentapharm GmbH purposefully established sufficient minimum contacts such that the exercise of personal jurisdiction would be fair and reasonable, *id.* at 1277.

In this particular case, however, the court need not answer either of those questions. Even assuming that this suit directly arises out of the Massachusetts shipment,[6] and that a single shipment to this country constitutes sufficient minimum contacts, Pentapharm GmbH is not amenable to service of process from this court (as explained in Section II.B.2, *infra*), so it would be impermissible to exercise specific jurisdiction.

        b.     *Pentapharm AG*

Pentapharm AG's contacts with the United States, on the other hand, are more extensive than those of its sister company. In addition to maintaining a website at "pentapharm.com," Pentapharm AG sells its pharmaceutical and diagnostics ingredients directly to a few American purchasers, sells its cosmetics ingredients to its American distributor in Connecticut, owns multiple trademarks in this country, and has filed an application (on behalf of Pentapharm GmbH) to register the ROTEG trademark in the United States.

---

[6]The parties did not brief this issue. According to the complaint, Haemoscope's trademark infringement and trademark dilution claims directly arise out of purported descriptive, misdescriptive and generic misuses of Haemoscope's registered trademarks on Pentapharm GmbH's website. But reading the complaint broadly and considering the liberal notice pleading standards applicable to this case, it is not unreasonable to conclude that this suit is also directly related to the Massachusetts shipment. Moreover, Haemoscope evidently learned about the Massachusetts shipment through discovery in this case.

Pentapharm AG is not subject to specific jurisdiction. This suit does not arise out of Pentapharm AG's sales of diagnostics or cosmetic ingredients in the States, its relationship with a distributorship, or its ownership of trademarks in the United States—none of those contacts have anything to do with the ROTEG device (its sister company's product), and thus are unrelated to this suit. Further, the pending suit does not directly arise out of Pentapharm AG's application to register the ROTEG trademark in the United States. Rather, as noted above, it arises out of purported misuses of Haemoscope's registered marks on the Pentapharm defendants' websites.

The "pentapharm.com" website presents a more complicated issue. Because "pentapharm.com" includes some limited information relating to the ROTEG device,[7] this suit "arises out of" those ROTEG-related references on the website. Thus, the question is whether the website constitutes the minimum contacts necessary to satisfy due process requirements. The website is arguably a hybrid, and if a hybrid website is highly commercially interactive, a court may exercise specific jurisdiction. *Haggerty Enters.*, 2001 WL 968592, at *5. Unlike Pentapharm GmbH's website, visitors to "pentapharm.com" are able to download a catalog, and the site offers contact information that includes a contact in Connecticut. While the *LaSalle Nat'l Bank* court held that a website that offered access to a catalog and contact information was passive, 85 F. Supp. 2d at 862, in *Publications International*, the court found an arguably similar website to be a highly commercially interactive, hybrid website because, after requesting a

---

[7]The downloadable catalog directs readers interested in obtaining information about ROTEG to contact its sister company, Pentapharm GmbH, but does not provide any information regarding the product. Additionally, Pentapharm AG's website has a link to the "pentapharm.de" website, and features a profile of Pentapharm GmbH in the description of the Pentapharm companies.

12

catalog through the website, users received defendant's catalog and could place orders, 121 F. Supp. 2d at 1183.

This court, however, need not reconcile those cases to rule on specific jurisdiction. Even if "pentapharm.com" *generally* were a highly commercially interactive, hybrid website, it is passive with respect to the ROTEG device. The interactive features of Pentapharm AG's website—*i.e.*, the downloadable catalog and contact information—relate solely to Pentapharm AG's products and services. This case does not directly arise out of the interactive website features, which are unrelated to the ROTEG device, so this court does not consider them in determining whether it may exercise specific jurisdiction. *See RAR, Inc.*, 107 F.3d at 1277 (in minimum contacts analysis for specific jurisdiction, court may consider only defendant's contacts that relate to the suit; it may not aggregate all of defendant's contacts with a forum). The few ROTEG-related references on the website are purely informational. This court therefore finds that with respect to the ROTEG device, "pentapharm.com" is a passive website which cannot satisfy the minimum contacts requirement. *See Haggerty Enters.*, 2001 WL 968592, at *6-7

While the court lacks specific jurisdiction, it may turn out that Pentapharm AG's contacts constitute "continuous and systematic general business contacts with the forum" and provide a basis for the exercise of general jurisdiction.[8] *RAR, Inc.*, 107 F.3d at 1277 (internal quotation marks omitted). Due to the parties' misunderstanding regarding the standard that applies to federal question cases, however, the parties did not address this issue adequately in their briefs. Without further information regarding the extent of Pentapharm AG's contacts with the United

---

[8]The "pentapharm.com" website, standing alone, would not warrant exercising general jurisdiction, however, because it does not permit direct sales through the website. *See LaSalle Nat'l Bank*, 85 F. Supp. 2d at 862.

States, the court cannot determine whether such contacts warrant the exercise of general jurisdiction. The parties therefore are ordered to submit briefs addressing whether Pentapharm AG is subject to general jurisdiction.

2.  *Amenability to Service*

Rule 4 of the Federal Rules of Civil Procedure governs whether a defendant is amenable to service of process in a federal action. *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). In the case at bar, the provisions of Rule 4(k)(1) and (2) are relevant. Rule 4(k)(1) provides that service is effective to establish personal jurisdiction over a defendant when either a federal statute authorizes service or the defendant could be subjected to the jurisdiction of a court in the forum state under the state's long arm statute. Fed. R. Civ. P. 4(k)(1). Rule 4(k)(2), on the other hand, provides for service of process upon a foreign defendant only if (1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state court of general jurisdiction, and (3) the exercise of personal jurisdiction does not violate the Constitution or any other federal law. *United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 38 (1st Cir. 1999).

a.  *Rule 4(k)(1)*

Neither defendant is amenable to service of process under Rule 4(k)(1). This is not a case in which a federal statute authorizes service of process—the Lanham Act does not provide for nationwide service of process. *LFG, LLC v. Zapata Corp.*, 78 F. Supp. 2d 731, 735 (N.D. Ill, 1999). Likewise, neither Pentapharm AG nor Pentapharm GmbH are within the reach of the Illinois long arm statute, 735 ILCS 5/2-209. Even though the Illinois long arm statute allows courts to exercise personal jurisdiction to the full limits of the United States Constitution, *RAR*,

14

*Inc.*, 107 F.3d at 1276, neither defendant has the necessary minimum contacts with Illinois to be subject to jurisdiction: defendants have no offices in Illinois and do not offer, advertise, promote or sell any products here. Further, as discussed above, Haemoscope cannot establish sufficient minimum contacts solely through the Pentapharm defendants' respective websites.

Haemoscope, however, argues that this court has specific jurisdiction for two reasons: because all harm and injury caused by defendants' tortious conduct is felt by plaintiff in Illinois, and because doctors in Illinois helped defendants with testing and promotion of the ROTEG device. Both of these arguments fail. Regarding Haemoscope's first point, "[a]n Illinois court does not acquire jurisdiction under the 'last act' doctrine simply because an economic loss is felt in Illinois when all the conduct contributing to the injury occurred outside Illinois." *Turnock*, 816 F. 2d at 335. Thus, an injury to an interest located in a particular state, without additional contacts with that state, is an insufficient basis for personal jurisdiction. *See, e.g., Indianapolis Colts, Inc. v. Metro. Baltimore Football Club L.P.*, 34 F.3d 410, 412 (7th Cir. 1994); *Lifeway Foods, Inc.*, 940 F. Supp. at 1319. And as already noted, the Pentapharm defendants have no other contacts with Illinois.

Haemoscope's argument that Illinois doctors helped the Pentapharm defendants test the ROTEG device, and did so by using a ROTEG device in Illinois, also fails as a matter of fact.[9] The Pentapharm defendants submitted sworn affidavits attesting that the research conducted by the Illinois doctors was done in Germany, not in Illinois, that no ROTEG device has ever been in

---

[9]This argument also seems impermissibly to attribute to *Pentpharm AG* contacts that, had they occurred, likely were contacts between *Pentapharm GmbH* and Illinois; given that the ROTEG device is Pentapharm GmbH's product, that defendant presumably would have conducted ROTEG-related research.

15

Illinois, and further, that the Pentapharm defendants were not involved in the research. When a court evaluates whether to exercise personal jurisdiction, if there are facts in affidavits submitted by defendants that the plaintiff does not refute, the court accepts those facts as true. *Haggerty Enters.*, 2001 WL 968592, at *2. Although Haemoscope submitted an affidavit addressing the research issue, the relevant statements in that affidavit were not based on the personal knowledge of the affiant.[10] Because there is no competent evidence to refute the Pentapharm defendants' affidavits, the court accepts the facts set forth in those affidavits regarding the research conducted by Illinois doctors. Accordingly, the court concludes that neither Pentapharm AG nor Pentapharm GmbH is amenable to service of process under the Illinois long-arm statute.

      b.    *Rule 4(k)(2)*

The crux of Haemoscope's argument is that the Pentapharm defendants are amenable to service of process under Rule 4(k)(2). This could be a strong argument with respect to Pentapharm AG had Haemoscope not overlooked one critical aspect of Rule 4(k)(2): Rule 4(k)(2) applies only if Pentapharm AG is not subject to jurisdiction in another state. Haemoscope did not brief that issue at all. The Pentapharm defendants argued that Pentapharm AG has stronger contacts with other states, and thus may be subject to jurisdiction in those states.

If Pentapharm AG wants to avoid the reach of Rule 4(k)(2), it must identify another jurisdiction where it would be amenable to suit; if it does so, it will be effectively consenting to

---

[10] Haemoscope submitted the affidavit of its President, Dr. Eli Cohen, who stated in relevant part that: (1) two doctors affiliated with Loyola University of Chicago Medical Center in Maywood, IL participated in research and published an article relating to the ROTEG device; and (2) "It would have been irresponsible of the Loyola doctors not to have had use of a [ROTEG] device at their laboratories for conducting or at least checking on the work done and reported in their article. That device would have been present in this District, independently of whether there was FDA approval for sale of such device." (Pl.'s Opp. Mot. Dismiss, Ex. L, ¶ 5.)

16

jurisdiction in that forum. *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001); *Swiss Am. Bank, Ltd.*, 191 F.3d at 41. In that case, Haemoscope will have three options: (1) move to transfer this action to a district court in the state identified; (2) discontinue this action (perhaps to proceed in another court); or (3) dispute whether Pentapharm AG is subject to personal jurisdiction in the identified state. *Swiss Am. Bank, Ltd.*, 191 F.3d at 42. On the other hand, if Pentapharm AG does not identify another state, the court must determine whether Pentapharm AG is amenable to process under Rule 4(k)(2). *ISI*, 256 F. 3d at 552. At the status hearing scheduled in the accompanying minute order, the parties should be prepared to address how they wish to proceed.

With respect to Pentapharm GmbH, Rule 4(k)(2) is irrelevant. As discussed earlier, the only contact between Pentapharm GmbH and the United States that is relevant to the minimum contacts analysis is the shipment of the ROTEG device to Massachusetts. If that single contact is sufficient to satisfy the minimum contacts requirement, then Pentapharm GmbH will be subject to personal jurisdiction in another state (Massachusetts),[11] and Rule 4(k)(2) would not assist Haemoscope. If that single contact does not satisfy the minimum contacts requirement, then it would violate the Fifth Amendment to subject Pentapharm GmbH to personal jurisdiction.

---

[11] Assuming the single shipment satisfies constitutional due process requirements, then a federal court in Massachusetts may exercise specific jurisdiction as long as the defendant falls within the reach of the Massachusetts long-arm statute. *See Am. Home Assurance Co. v. Sport Maska, Inc.*, 808 F. Supp. 67, 71-72 (D. Mass. 1992). The Massachusetts long-arm statute permits the exercise of personal jurisdiction over anyone "transacting business," "contracting to supply services or things," and "causing tortious injury" in that state. *See* Mass. Gen. L. ch. 223A, § 3(a)-(c). Haemoscope's claims sound in tort; additionally, the shipment likely constitutes both a business transaction and a contract to supply things. Thus, one or more of those provisions should apply to make Pentapharm GmbH amenable to service in Massachusetts.

C.   Failure to State a Claim

Given the lack of personal jurisdiction over Pentapharm GmbH, that defendant's motion to dismiss for failure to state a claim is denied as moot. Additionally, the court cannot rule on Pentapharm AG's motion to dismiss for failure to state a claim unless and until it determines that Pentapharm AG is subject to personal jurisdiction in this court. *See Steel Co. v. Citizens for Better Environ.*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause.").

## III.   CONCLUSION

As explained above: (1) Pentapharm AG's motion to dismiss for improper service is denied; (2) Pentapharm GmbH's motion to dismiss for lack of personal jurisdiction is granted; and (3) regarding the Pentapharm defendants' motion to dismiss for failure to state a claim, the court denies the motion with respect to Pentapharm GmbH as moot and does not reach the motion as it relates to Pentapharm AG.

Regarding Pentapharm AG's motion to dismiss for lack of general jurisdiction,[12] there are three possible outcomes: (a) Pentapharm AG's contacts with the United States are insufficient to meet constitutional minimum contacts requirements, and thus the defendant is not subject to general jurisdiction in this country; (b) Pentapharm AG's contacts with the United States satisfy minimum contacts requirements, and those contacts are sufficiently concentrated in a particular state (other than Illinois) that Pentapharm AG is amenable to service of process in that state under Rule 4(k)(1); or (c) Pentapharm AG's contacts with the United States satisfy minimum contacts requirements, but those contacts are too diffuse for Pentapharm AG to be amenable to

---

[12] As discussed earlier, Pentapharm AG is not subject to specific jurisdiction.

service of process in any particular state, making Pentapharm AG amenable to service of process from this court under Rule 4(k)(2). The court's ruling on that 12(b)(2) motion is deferred, subject to a status hearing and possibly further briefing.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: December 6, 2002